UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PERSONETA, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Case No. 05 C 4877 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| PERSONA SOFTWARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Personeta, Inc. ("Personeta") sued Persona Software, Inc. ("Persona") for federal and state trademark infringement and for violation of other state unfair competition laws. Personeta has moved for a preliminary injunction to prevent Persona from using the Persona name during the pendency of this litigation. The motion for preliminary injunction is granted.

**I. Background**

Personeta was founded in 2000, and has been using Personeta as a trade name since that time. Personeta provides software to telecommunications service providers. One of Personeta's core products, TappS NSC, is an application server and service platform that allows management/control of fixed and mobile phone services and resources. TappS NSC allows users to customize software, using the Java programming language, for use on the service platform to create increased flexibility and functionality of telecommunications systems. Personeta has made numerous sales in other countries, but has thus far made only one sale in the United States (to IDT Corp. in 2003). Since then, Personeta has had its software installed with customers on a trial basis three times.

1

Persona was founded in 1999 under the name LongBoard, Inc. On June 1, 2005, Persona changed its name from LongBoard, Inc. to Persona Software. Persona's core product is the Persona OnePhone which allows cell phone users to transition seamlessly from cellular networks to Wi-Fi networks, when available. Although their core products differ, both companies offer "add-on" software that has similar functionality.

## II.     Preliminary Injunction Standard

The party moving for a preliminary injunction must show that it has a likelihood of success on the merits, that it has no adequate remedy at law, and that it will suffer irreparable harm if the injunction is not granted. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002) (citing *Ty, Inc. v. Jones Group,* 237 F.3d 891, 895 (7th Cir. 2001)). If these conditions are satisfied, then the court must consider whether issuance of an injunction will cause any irreparable harm to the nonmoving party. *Id.* (citing *Ty,* 237 F.3d at 895). Finally, the court must consider whether grant or denial of the injunction would cause any consequences to the public. *Id.* These factors are weighed using a sliding-scale approach: "the more likely the plaintiff's chance of success on the merits, the less the balance of harms need weigh in its favor." *Id.* "A preliminary injunction is a very serious remedy, never to be indulged in except in a case clearly demanding it." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1044 (7th Cir. 2000) (citing *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1184 (7th Cir. 1989)).

## III.     Likelihood of Success on the Merits

To prevail in an action for trademark infringement, the plaintiff must establish: "(1) that it has a protectible trademark, and (2) a likelihood of confusion as to the origin of the defendant's product." *Ty*, 237 F.3d at 897 (quoting *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*,

846 F.2d 1079, 1084 (7th Cir. 1988)). At the preliminary injunction stage, the plaintiff must show that "it has a 'better than negligible' chance of succeeding on the merits so that injunctive relief would be justified." *Id.* In this case, the validity of Personeta's mark is undisputed, and so the court's analysis will focus on whether there is a likelihood of confusion.

"In assessing the likelihood of confusion, courts have identified seven relevant factors that help in deciding the ultimate question: (1) the similarity of the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiff." *Sullivan v. CBS Corp.*, 385 F.3d 772, 776 (7th Cir. 2004) (citing *Promatek,* 300 F.3d at 812).

    A.    <u>Similarity of the Marks</u>

Similarity of the marks weighs in favor of Personeta. The trade names in this case are Personeta, Inc. and Persona Software, Inc. The Seventh Circuit has stated that "if one word or feature of a composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements." *Ty*, 237 F.3d at 898 (quoting *Henri's Food Prods. Co., Inc. v. Kraft, Inc.*, 717 F.2d 352, 356 (7th Cir. 1983)). "It is 'inappropriate to focus on minor stylistic differences to determine if confusion is likely' if the public does not encounter the two marks together." *Id.* (quoting *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1115 (7th Cir. 1997)). In *Ty*, the Seventh Circuit compared "Beanie Babies" with "Beanie Racers." *Id.* The court found that "Beanie" was the salient portion of the mark and entitled to more weight than the surrounding elements. *Id.* at 899.

In this case, "Personeta" and "Persona" are the salient feature of the names. These

names are similar in appearance and sound. Both marks have the identical first six letters, and both end in "a." What is most salient about them, or most memorable, is the use of the term "person," which is identical in the two names. Additionally, when evaluated aurally, the names are quite similar. *Meridian*, 138 F.3d at 1116 ("Any visual distinctions between the parties' use of [the mark] are irrelevant in the aural realm."). Although the names are not identical – Personeta contains an extra syllable and a "t" sound – the marks are sufficiently similar to weigh in favor of a likelihood of confusion.

    B.    <u>Similarity of the Products</u>

"In assessing whether products are similar, the question is 'whether the products are the kind the public attributes to a single source.'" *Ty*, 237 F.3d at 899 (citing *McGraw-Edison Co. v. Walt Disney Productions,* 787 F.2d 1163, 1169 (7th Cir. 1986)). "When considering whether products are closely related for the purpose of likelihood of confusion, '[a] closely related product is one which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner.'" *Id.* at 900 (quoting *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 958 (7th Cir. 1992)).

Persona and Personeta both sell software for use in the telecommunications industry. At oral argument, the parties agreed that while their core products do not compete, some of their "add-on" software has the same functionality. Even though the core products do not directly compete, the products are telecommunications software that increase the functionality and adaptability of telephone systems. Given the marketplace in the telecommunications field which contains a plethora of new start-up companies and a constantly changing array of new products,

4

customers of both companies may well believe that Personeta's and Persona's products come from a single source. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 463 (7th Cir. 2000) (finding that HERBROZAC was a similar product to PROZAC "because dietary supplements are an area of natural expansion for pharmaceutical companies"). Mr. McIlvane, CEO of Personeta, averred that there are hundreds of new and emerging telecom providers. These companies, who are new to the industry and new to the products of various software providers, may be especially susceptible to believing that Personeta's and Persona's products come from a single source. Therefore, this factor weighs in favor of likelihood of confusion.

        C.      <u>Area and Manner of Concurrent Use</u>

"When considering the area and manner of concurrent use factor, [the court has] to assess whether 'there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties.'" *Ty*, 237 F.3d at 900 (quoting *Forum Corp. of North America v. Forum, Ltd.,* 903 F.2d 434, 442 (7th Cir.1990)). In evaluating this factor, courts consider: (1) the relative geographical distribution areas; (2) whether there exists evidence of direct competition between the products; and (3) whether the product is sold through the same marketing channels. *Id.*

Although not explicitly stated, it appears that both Personeta and Persona are attempting to sell their products nationwide, and both companies market their products at the same industry trade shows. Customers who are seeking to expand the flexibility of their telephone systems may have some interest in the products of both companies.

There is also some overlap in their targeted customers. Both companies sell their software exclusively in the telecommunications industry. Personeta primarily targets service

5

providers, and Persona primarily targets equipment providers. Nevertheless, there appears to be some overlap in their customer base because, at oral argument, Persona admitted that it, at least indirectly, markets its products to service providers. This factor favors a likelihood of confusion.

D. Degree of Care

Persona argues that the customers of both Persona and Personeta are sophisticated. Both parties agree that the products are expensive and highly technical. Additionally, the selling cycles for both parties' products are long: typically eighteen months to two years. The court agrees that, at the point of sale, the customers of both companies are highly sophisticated and unlikely to be confused.

Actionable trademark infringement, however, is not limited to confusion occurring at the time of sale. This court can evaluate whether confusion is likely to cause an injury to goodwill even if it is unlikely to result in any lost sales. *Meridian*, 128 F.3d at 1117 ("[I]njuries to goodwill, as well as economic injuries from lost sales opportunities, can take place from consumer confusion."). In this case, Personeta argues that the customers of both companies do not exercise a high degree of care when they send out requests for quotes ("RFQs"). Customers are likely to send out RFQs based on name recognition or initial contacts alone, and at this early stage, are likely to be confused by the companies' similar names. This confusion could harm Personeta's goodwill if, for example, a customer mistakenly contacts Persona and suffers "perceived slights or disagreements." *Meridian*, 128 F.3d at 1117. The court finds that the degree of sophistication of consumers at the RFQ stage favors finding a likelihood of confusion.[1]

---

[1]Personeta characterizes this type of confusion as initial interest confusion. Persona argues that initial interest confusion is not actionable in this circuit where the products are not in direct competition. While the Seventh Circuit cases addressing initial interest confusion have all

6

E.  Strength of Plaintiff's Mark

"The term 'strength' as applied to trademarks refers to the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular . . . source." *Eli Lilly*, 233 F.3d at 464 (quoting *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 959 (7th Cir. 1992)). In this case, Personeta's mark is fanciful, and thus it has inherent distinctiveness. Therefore, this factor weighs in favor of a likelihood of confusion.

F.  Actual Confusion

Although actual confusion is not required for a preliminary injunction, "evidence of actual confusion, if available, is entitled to substantial weight." *Meridian*, 128 F.3d at 1118. As evidence of actual confusion, Personeta points to five instances of "confusion" at a trade show in September 2005. Representatives of two telecommunications companies and another unknown person thought that Personeta was formerly known as LongBoard when in fact Persona was

---

dealt with competing products, the Seventh Circuit has not explicitly made direct competition a requirement.

Additionally, the Seventh Circuit has indicated that initial interest confusion is inappropriate when the consumers of a product are sophisticated. *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 638 (7th Cir. 1999) (stating that post-sale inspection can cure initial interest confusion when consumers of the products are sophisticated); *Rust Environment & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1217 (7th Cir. 1997) (sophistication of consumers in seeking wastewater engineers made initial interest confusion unlikely). In this case, Personeta argues that its customers are not sophisticated at the time of initial interest.

A likelihood of confusion at the RFQ stage supports a finding a trademark infringement. Since the products are related and marketed at the same trade shows, Personeta is likely to suffer harm to its goodwill if customers are confused when sending out RFQs. Additionally, customers are likely to suffer harm in the form of increased transaction costs if they mistakenly send an RFQ to Persona instead of Personeta or if they have to spend extra time searching for Personeta because of their initial confusion.

formerly known as LongBoard. A representative of Pulver came to Personeta's booth to present Personeta with a 2005 Pulver 100 plaque. This representative told Personeta that she found the similarity of the two names confusing. Finally, an editor of VON Magazine had a meeting scheduled and could not remember whether the meeting was with Personeta or Persona.

These instances of confusion do not demonstrate that customers were confused as to the source of the products. No one stated that they believed both companies' products came from a single source or that they believed that Persona's products were in some way affiliated with Personeta. Personeta has not identified with any specificity the individuals who expressed "confusion," with the exception of the editor of VON Magazine. The court does not know if any of these people have input into buying decisions or whether, rather, they are lay people who are not the potential consumers of these products. The Seventh Circuit has stated, "There is great variance in consumer competence, and it would be undesirable to impoverish the lexicon of trade names merely to protect the most gullible fringe of the consuming public. The Lanham Act does not cast the net of protection so wide." *Rust Environment*, 131 F.3d at 1217 (quoting *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership,* 34 F.3d 410, 414 (7th Cir. 1994)). Without knowing more, this court cannot place much weight on the anecdotal instances of the confusion identified by Personeta, and notes that Persona's Vice President of Marketing averred that Persona has never experienced an instance of actual confusion.[2]

    G.    <u>Defendant's Intent to Palm Off Its Goods as Those of the Plaintiff</u>

---

[2]The court also notes that Personeta stated that both companies had booths at the 2005 SuperComm Conference which was attended by over 20,000 delegates. Personeta has not identified any instances of actual confusion at that conference.

"This factor looks primarily for evidence that the defendants are attempting to 'pass off' their products as having come from the plaintiff." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 644 (7th Cir. 2001). Personeta argues that this court can infer Persona's wrongful intent because Persona changed its name from LongBoard knowing of Personeta's existence as a competitor.

The evidence presented by Personeta, however, is insufficient to support this inference. Although Personeta states that Persona sponsors booths and makes presentations at the same trade shows as Personeta, the trade shows that Personeta has identified as being attended by both companies took place *after* Persona's name change. Without more information, it is possible that neither company noticed the other until the name change occurred.

Cases in the Seventh Circuit do not support Personeta's argument that this court should infer intent merely from Persona's knowledge of Personeta's similar name. *Barbecue Marx*, 235 F.3d at 1046 (stating that knowledge of a competitor's similar name is not enough to show intent on the part of the defendant); *Meridian*, 128 F.3d at 1120 ("[I]n the trademark infringement context, 'intent' refers to the intent to confuse customers, not merely the intent to use a mark that is already in use somewhere else."). The case relied on by Personeta deals with adopting a similar trade dress for a product and not a similar trade name. *See Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 937-38 (7th Cir. 1989). Even if this court infers that Persona knew Personeta prior to the adoption of Persona's name, there is no evidence that Persona intended to pass off its software as having come from Personeta.

H. Conclusion

At this early stage, Personeta only has to show that it has a "better than negligible"

9

chance of succeeding on the merits. Since the similarity of the names, the area and manner of concurrent use, the strength of the mark, and the degree of care exercised by consumers all support a likelihood of confusion, the court finds that Personeta has shown a "better than negligible" chance of success on the merits.

## IV. Irreparable Harm to Personeta if the Injunction Is Denied

"A plaintiff seeking a preliminary injunction must also prove that it has no adequate remedy at law and as a result, will suffer irreparable harm if the injunction is not issued." *Promatek*, 300 F.3d at 813 (citing *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 386 (7th Cir.1984)). "[I]t is well settled that injuries arising from Lanham Act violations are presumed to be irreparable, even if the plaintiff fails to demonstrate a business loss." *Id.* Personeta has made a showing of irreparable harm, to the extent that there is a likelihood of confusion, because it will suffer a loss of goodwill if the injunction does not issue.

## V. Balance of Harms

### A. Irreparable Harm to Persona if the Injunction Is Granted

Persona has demonstrated that it will suffer harm if the preliminary injunction is granted. Some of this harm is tangible, $125,000 in out-of-pocket costs to change its name, but as Personeta correctly points out, Persona could be protected from this loss by a bond requirement if the injunction issues.

Persona also claims that it will suffer intangible harm if it is required to change its name during the pendency of the litigation. Although Persona has had its new name for less than six months, Persona argues that a name change will harm its reputation because another name change occurring so close in time will indicate instability to its customers.

B.      Balance of Harms to Personeta and Persona

In evaluating the balance of harms, a sliding scale approach applies: the more likely the plaintiff's chance of success on the merits, the less the balance of harms need weigh in its favor and vice versa. *Promatek,* 300 F.3d at 811. The court finds that Personeta has at least a moderate likelihood of success on the merits, and that the balance of harms favors Personeta. Personeta has been using its name for over five years, whereas Persona adopted its name only six months ago. "It is the *second* user's responsibility to avoid confusion in its choice of a trademark." *Forum Corp.*, 903 F.2d at 440 (emphasis in original). During the pendency of the case, Personeta is likely to suffer harm to its goodwill. Any harm to Persona's reputation is likely to be slight given the short period of time that it has used its new name.[3] The balance of harms sufficiently favors Personeta to satisfy the sliding scale.

## VI.    Public Interest

The court also finds that the public interest favors issuance of the injunction to prevent the likelihood of confusion. *Promatek*, 300 F.3d at 813-14 ("As to the public interest, because the injunction prevents consumer confusion in the marketplace, the public interest will be served as well.").

---

[3]The court also notes that the harm to Persona will be much greater in the future if the preliminary injunction is now denied but a permanent injunction later issues.

## VI. Conclusion

For the foregoing reasons, the motion for preliminary injunction is granted.

ENTER:


_____/s/_____
Joan B. Gottschall
United States District Judge

Dated: December 21, 2005